**ANDERSON & KARRENBERG**
Heather M. Sneddon (#9520)
John A. Bluth (#9824)
Nathan P. Hatch (#13738)
50 West Broadway, Suite 700
Salt Lake City, Utah 84101-2035
Telephone:    (801) 534-1700
Facsimile:    (801) 364-7697
hsneddon@aklawfirm.com
jbluth@aklawfirm.com
nhatch@aklawfirm.com

*Attorneys for Plaintiffs*

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **JASON SCOTT,** an individual on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**SWIFT FINANCIAL CORPORATION,** a Delaware corporation,  doing business as **SWIFT CAPITAL, LLC,**<br><br>Defendant. | **CLASS ACTION COMPLAINT**<br><br>**(Jury Demanded)**<br><br>Civil No. 1:17-cv-00032-PMW<br><br>Magistrate Judge Paul M. Warner |

Jason Scott, individually and on behalf of all other persons similarly situated, brings this action against Defendant Swift Financial Corporation, doing business as Swift Capital, LLC ("Swift Capital"), and alleges, upon personal knowledge as to his own conduct, and upon information and belief as to the conduct of others, as follows:

## INTRODUCTION

1.      Plaintiff brings this class action against Defendant to secure redress because it willfully violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, by causing unsolicited calls to be made to Plaintiff's and other class members' cellular telephones through the use of an auto-dialer and/or artificial, pre-recorded or artificial voice message.

2.      Defendant made or caused to be made one or more unauthorized calls to Plaintiff's cell phone using an automatic telephone dialing system ("ATDS") or pre-recorded voice for the purpose of soliciting business from Plaintiff.

3.      The TCPA was enacted to protect consumers from unsolicited telephone calls exactly like those alleged in this case.

4.      In response to Defendant's unlawful conduct, Plaintiff files the instant complaint seeking an injunction requiring Defendant to cease all unsolicited telephone calling activities to consumers registered on the NATIONAL DO NOT CALL REGISTRY ("DNC"), all calls using ATDS to cellular telephones without express written authorization, and all calls to individuals that have asked to be placed on Defendant's internal do-not-call list and an award of statutory damages to the members of the Class under the TCPA equal to $500.00 per violation, together with court costs, reasonable attorneys' fees, and treble damages (for knowing and/or willful violations).

## PARTIES

5.      Plaintiff Jason Scott is a citizen of the State of Utah and resides in Box Elder County, Utah.

6. Defendant Swift Financial Corporation is a corporation organized under the laws of the State of Delaware, and doing business in California as Swift Capital, LLC.

7. Whenever in this Complaint it is alleged that Defendant committed any act or omission, it is meant that the Defendant's officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's officers, directors, vice-principals, agents, servants, or employees.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

9. The Court has personal jurisdiction over Defendant because it conducts significant business in this District, and the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District.

10. This court has subject matter jurisdiction pursuant to 28 U.S.C. 1331 because this dispute involves claims under federal law.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

12. Defendant is subject to specific personal jurisdiction in this District because it has continuous and systematic contacts with this District through its telemarketing efforts that target

this District, and the exercise of personal jurisdiction over Defendant in this District does not offend traditional notions of fair play or substantial justice.

## LEGAL BASIS FOR THE CLAIMS

13.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In doing so, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy …."  Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

14.     Specifically, the TCPA restricts telephone solicitations (*i.e.*, telemarketing) and the use of automated telephone equipment.  The TCPA limits the use of automatic dialing systems, artificial or pre-recorded voice messages, Short Message Service ("SMS") text messages, and fax machines.  It also specifies several technical requirements for fax machines, autodialers, and voice messaging systems – principally with provisions requiring identification and contact information of the entity using the device to be contained in the message.

15.     In its initial implementation of the TCPA rules, the Federal Communications Commission ("FCC") included an exemption to its consent requirement for pre-recorded telemarketing calls.  Where the caller could demonstrate an "established business relationship" with a customer, the TCPA permitted the caller to place pre-recorded telemarketing calls to residential lines.  The new amendments to the TCPA, effective October 16, 2013, eliminate this established business relationship exemption.  Therefore, all pre-recorded telemarketing calls to residential lines and all ATDS calls to wireless numbers violate the TCPA if the calling party does not first obtain express written consent from the called party.

16.     As of October 16, 2013, unless the recipient has given <u>prior express written</u> <u>consent</u>,[1] the TCPA and FCC rules under the TCPA generally:

        a.     Prohibit solicitors from calling residences before 8 a.m. or after 9 p.m., local time;

        b.     Require solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted;

        c.     Prohibit solicitations to residences that use an artificial voice or a recording;

        d.     Prohibit any call or text made using automated telephone equipment or an artificial or pre-recorded voice to a wireless device or cellular telephone;

        e.     Prohibit any call made using automated telephone equipment or an artificial or pre-recorded voice to a cellular telephone; and

        f.     Prohibit certain calls to members of the National Do Not Call Registry.

17.     Regardless of any prior express written consent, the TCPA and FCC rules[2] under the TCPA also:

        a.     Require solicitors have a written policy, available upon demand, for maintaining an internal do-not-call list;

---

[1] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or pre-recorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

[2] *See* 47 CFR § 64.1200(d)-(e).

b.      Require that personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the internal do-not-call list;

c.      Require that upon request from any residential, wireless, or cell phone subscriber not to receive calls from that person or entity, the subscriber's name, if provided, and telephone number must be placed on the internal do-not-call list at the time the request is made; and

d.      Require that a person or entity making telemarketing calls maintain a record of consumers' requests not to receive further telemarketing calls and that the do-not-call request must be honored for 5 (five) years from the time the request is made.

18.      Furthermore, in 2008, the FCC issued a Declaratory Ruling reiterating that "a company on whose behalf a telephone call is made bears the responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, 23 FCC Rcd 559, 564-65 (¶ 10) (2008). This ruling specifically recognized "on behalf of" liability in the context of an autodialed or pre-recorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b).

19.      Accordingly, the entity may be held liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call.  Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

## COMMON FACTUAL ALLEGATIONS

20.      Defendant Swift Capital is a financing company that provides loans to businesses and individuals across the country.

21.     Upon information and belief, Defendant places thousands of telemarking calls to individuals nationwide.

22.     Upon information and belief, Defendant, for its telemarketing scheme, utilized (and continues to utilize) a sophisticated telephone dialing system to call individuals *en masse* promoting its services.

23.     Defendant obtained these telephone numbers (*i.e.,* leads) by purchasing marketing lists containing consumers' telephone numbers.

24.     In Defendant's overzealous attempt to market services, it placed (and continues to place) phone calls to consumers who never provided consent to call and to consumers that have no relationship with Defendant.   Defendant knowingly made (and continues to make) these telemarketing calls without the prior express written consent of the call recipients. As such, Defendant has not only invaded the personal privacy of Plaintiff and members of the putative Class but also intentionally and repeatedly violated the TCPA.

## FACTS SPECIFIC TO PLAINTIFF JASON SCOTT

25.     Prior to many of the calls at issue here, Plaintiff registered his cellular telephone number ending in 0965 with the National Do Not Call Registry.

26.     Between approximately February 2016 and August 2016, Defendant contacted Plaintiff on his cellular telephone number via ATDS, as defined by 47 U.S.C. § 227(a)(1), at least 20 times without first obtaining Plaintiff's written consent.

27.     During conversations with Defendant's call center representatives, Plaintiff asked to be put on Defendant's internal do-not-call list.

28.     Plaintiff received all calls as described above on his cellular telephone assigned a number ending in 0965.

29.     Plaintiff answered numerous calls and spoke with a live representative of Defendant after the calls were routed.

30.     When Plaintiff first answered the call, the other end of the line was either silent for a moment followed by a series of clicks before he was engaged by a representative of Defendant or Plaintiff was greeted with a pre-recorded message.

31.     Plaintiff repeatedly asked Defendant not to call again because he was busy and, as the owner of a small business, was being pulled away from his work.

32.     Nonetheless, Defendant continued to call.

33.     Defendant invaded Plaintiff's privacy and disrupted his work day by continuing to make unwanted calls to him.

34.     At the time of the calls, Plaintiff did not have a business relationship with Defendant, nor did Plaintiff request information from Defendant about its products or services.

35.     It was obvious to Plaintiff that Defendant was engaged in a marketing campaign wherein Defendant contacted a large number of consumers using an auto dialer because he spoke with a different agent for Defendant each time, making it clear that Defendant had numerous agents engaged in its illegal telemarketing scheme.

36.     On information and belief, Plaintiff believes his number was either dialed randomly or from a database obtained by Defendant because Plaintiff never contacted Defendant or authorized Defendant to contact him.

37.     On information and belief, Plaintiff believes Defendant called him using an ATDS because Plaintiff received a large number of calls, indicating to Plaintiff based on his experience, that his cell phone number was stored in an electronic database or he was randomly dialed.  Furthermore, when he answered the calls, he was greeted by a pre-recorded message and/or there was silence on the other end of the line for several seconds before a live representative engaged him, indicating a live person had not dialed Plaintiff directly.

38.     On information and belief, Defendant utilized an automated system to call Plaintiff on every occasion.

39.     On information and belief, and based on the circumstances of all the calls, Defendant called Plaintiff using an ATDS.

40.     Plaintiff understood the purpose of Defendant's calls was to solicit business from Plaintiff.

41.     The telephone number Defendant called was assigned to a cellular telephone pursuant to 47 U.S.C. § 227(b)(1).

42.     Plaintiff pays the bills associated with the cellular telephone assigned the number ending in 0965.

43.     Plaintiff is the regular and exclusive user of the cellular telephone assigned the number ending in 0965.

44.     Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

45.     Plaintiff did not provide Defendant prior express written consent to receive calls to his cellular telephone utilizing an ATDS or artificial or pre-recorded voice, pursuant to 47 U.S.C. § 227(b)(1)(A).

46.     All calls Defendant made to Plaintiff violate 47 U.S.C. § 227(b)(1).

47.     Multiple calls Defendant made to Plaintiff violate 47 CFR § 64.1200.

48.     Plaintiff has reason to believe Defendant has called, and continues to call, thousands of wireless telephone customers to market its products and services without consent required by the TCPA.

49.     In order to redress injuries caused by Defendant's violations of the TCPA, Plaintiff, on behalf of himself and a class of similarly situated individuals, brings suit under the TCPA, 47 U.S.C. § 227, *et seq.*, which prohibits certain unsolicited voice and text calls to residential phone lines, and wireless or cellular phones.

50.     On behalf of the Plaintiff Class, Plaintiff seeks an injunction requiring Defendant to cease all wireless telemarketing and spam activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

**A.     Class Allegations**

51.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of himself and the following classes defined as follows (the "Class"):

**"Robocall Class":** All individuals in the United States who received a call made by or on behalf of Defendant to the individual's cellular telephone through the use of an automatic telephone dialing system, or pre-recorded voice, or any other device having the capacity to dial numbers without human intervention, from October 16, 2013 to the date the Class is certified, where Defendant's records fail

to demonstrate that prior express written consent was given by the recipient to make such call.

**"DNC Class":**  All individuals in the United States who received more than one telephone call (1) made by or on behalf of Defendant within a 12 month period; (2) to a telephone number that had been registered with the National Do Not Call Registry for at least 30 days; and (3) for whom Defendant has no record of consent to place such calls.

**"Internal DNC Class":**  All individuals in the United States who received more than one telephone call (1) made by or on behalf of Defendant within a 12 month period; (2) after requesting Defendant not call again, or otherwise asking to be placed on the Defendant's internal do-not-call list; (3) to any telephone number or any other residential, wireless, or cell phone number that was requested to be placed on the Defendant's internal do-not-call list; (4) within no less than 30 days and no more than five years after the do-not-call request, regardless of whether the recipient had given express written consent prior to the do-not-call request.

52.     The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and its current or former employees, officers, and directors; (3) Plaintiff's counsel and Defendant's counsel; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released.

53.     This suit seeks only statutory damages, statutory penalties, and injunctive relief for recovery of economic injury on behalf of the Class, and it expressly is not intended to request any recovery for personal injury and claims related thereto.

54. Plaintiff reserves the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

55. Plaintiff and members of the Class were harmed by Defendant's acts in at least the following ways:  Defendant, either directly or through agents, illegally contacted Plaintiff and the Class members via their residential, wireless, or cellular telephones by using an ATDS, thereby causing Plaintiff and the Class members to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiff and the Class members previously paid, and invading the privacy of Plaintiff and Class members.

**B.    Numerosity**

56.  The exact size of the Class is unknown and not available to Plaintiff at this time, but it is clear individual joinder is impracticable.

57. On information and belief, Defendant made telephone calls to thousands of consumers who fall into the definition of the Class.  Members of the Class can be easily identified through Defendant's records.

**C.    Commonality and Predominance**

58. There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class.

59. Common questions for the Class include, but are not necessarily limited to, the following:

       a.    Whether Defendant's conduct violated the TCPA;

b.      Whether Defendant or its agent(s) made telephone calls to consumers who did not previously provide Defendant and/or its agents with prior express written consent to receive such phone calls after October 16, 2013;

c.      Whether Defendant or its agent(s) systematically made telephone calls to consumers whose telephone numbers were registered with the National Do Not Call Registry;

d.      Whether Defendant or its agent(s) made telephone calls to consumers within more than 30 days or less than 5 years after those consumers requested not to be called by Defendant or its agent(s);

e.      Whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct;

f.      Whether Defendant or its agent(s) systematically made telephone calls to consumers after October 16, 2013 (other than calls made for emergency purposes or made with the prior express written consent of the called party) using any automatic dialing system or pre-recorded voice to any telephone number assigned to a cellular phone service; and

g.      Whether Defendant and its agent(s) should be enjoined from engaging in such conduct in the future.

**D.      Typicality**

60.      Plaintiff's claims are typical of the claims of the other members of the Class.

61.      Plaintiff and the Class sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiff and the Class.

13

**E.** **Adequate Representation**

62.     Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex class actions.

63.     Plaintiff has no interest antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

**F.** **Policies Generally Applicable to the Class**

64.     This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, and making final injunctive relief appropriate with respect to the Class as a whole.

65.     Defendant's practices challenged herein affect the Class members uniformly, and Plaintiff's challenge to those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

**G.** **Superiority**

66.     This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable.

67.     The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions.

68.     Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct.

69.     Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this FAC.

70.     By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.  Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

### FIRST CAUSE OF ACTION
**Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii)**
**("Robocall Class" on behalf of Plaintiff and the Class)**

71.     Plaintiff re-alleges and incorporates by reference each preceding paragraph as though set forth at length herein.

72.     Defendant made unsolicited and unauthorized calls using an ATDS or using an automated or pre-recorded voice to Plaintiff's and the Class Members' cellular telephones for the purpose of marketing products and/or services to Plaintiff and the Plaintiff Class Members.

73.     Defendant made the calls without prior express written consent of the Plaintiff and Plaintiff Class Members.

74.     The calls Defendant placed to Plaintiff invaded Plaintiff's privacy and disrupted his work day.

75.     The foregoing acts and omissions of Defendant constitutes numerous and multiple violations of the TCPA, including, but not limited to, each and every one of the above-cited provisions of 47 U.S.C. § 227, *et seq.*

15

76.     Plaintiff and the Plaintiff Class Members are entitled to and seek injunctive relief prohibiting such conduct in the future, pursuant to 47 U.S.C. § 227(b)(3)(A).

77.     As a result of Defendant's violations of 47 U.S.C. § 227, *et seq*., Plaintiff and the Plaintiff Class Members are also entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

78.     Additionally, because Defendant had knowledge that Plaintiff and the Plaintiff Class Members did not consent to the receipt of the aforementioned telephone solicitations, or because the Defendant willfully called Plaintiff and the Plaintiff Class Members without prior, express written consent, the Court should, pursuant to 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by the Plaintiff and Plaintiff Class Members for each and every violation.

**SECOND CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(c)(5)**
**("DNC Class" and "Internal DNC Class" on behalf of Plaintiff and the Classes)**

79.     Plaintiff re-alleges and incorporates by reference each preceding paragraph as though set forth at length herein.

80.     47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

81.     The TCPA's implementing regulation – 47 C.F.R. § 64.1200(c) – provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential [or wireless]

telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government.  Such do-not-call registrations must be honored indefinitely[.]"  *See* 47 C.F.R. § 64.1200(c)(2).

82.    In addition to the national do-not-call list regulations, 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential [or wireless] telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."  The procedures instituted must meet the following minimum standards:

> a.    Written policy.  Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

> b.    Training of personnel engaged in telemarketing.  Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

> c.    Recording, disclosure of do-not-call requests.  If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made.  Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made.  This period may not exceed thirty days from the date of such request…

> d.    Identification of sellers and telemarketers.  A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, and name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted.  The telephone number provided may not be a 900

number or any other number for which charges exceed local or long distance transmission charges.

  e. Affiliated persons or entities.  In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

  f. Maintenance of do-not-call lists.  A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls.  A do-not-call request must be honored for 5 years from the time the request is made.

83. 47 C.F.R. § 64.1200(e), provides that 47 C.F.R. §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" which the Report and Order, in turn, provides as follows:

The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists.  For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers.  We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

84. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to residential and wireless telephone subscribers such as Plaintiff and members of the DNC Class who registered their respective telephone numbers on the National Do-Not-Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.  These consumers requested to not receive calls from Defendant, as set forth in 47 C.F.R. § 64.1200(d)(3).

85.     Defendant made, or directed to be made, more than one unsolicited telephone call to Plaintiff and members of the DNC Class within a 12-month period without their prior express, written consent to place such calls.

86.     Plaintiff and members of the DNC Class never provided any form of consent to receive telephone calls from Defendant, and/or Defendant did not have a record of consent to place telemarketing calls to them.

87.     Plaintiff and members of the Internal DNC Class requested Defendant stop calling, and Defendant continued calling beyond a reasonable time in which Defendant should have complied with the do-not-call request.

88.     Defendant violated 47 C.F.R. § 64.1200(d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff and the DNC Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from it.

89.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the DNC Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200.  As a result of Defendant's conduct alleged herein, Plaintiff and the DNC Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for each and every such violation of 47 C.F.R. § 64.1200.

90.     Additionally, because Defendant had knowledge that Plaintiff and the Plaintiff Class Members did not consent to the receipt of the aforementioned telephone solicitations, or because the Defendant willfully called Plaintiff and the Plaintiff Class Members without prior,

express written consent, or continued calling after Plaintiff and the Plaintiff Class Members requested Defendant stop calling, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the Plaintiff and Plaintiff Class Members for each and every violation.

## ATTORNEYS' FEES

91.     Plaintiff re-alleges and incorporates by reference each preceding paragraph as though set forth at length herein.

92.     Plaintiff is entitled to recover reasonable attorney fees pursuant to Fed. R. Civ. P. 23(h) and requests the attorneys' fees be awarded when a class is certified.

## JURY DEMAND

93.     Plaintiff, individually and on behalf of the Plaintiff Class, demands a jury trial on all issues triable to a jury.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, individually and on behalf of the Plaintiff Class, prays for the following relief:

a.     An order certifying this matter as a class action with Plaintiff as Class Representative, and designating Anderson & Karrenberg, as lead Class Counsel;

b.     An award of actual and statutory damages of $500 for each and every negligent violation to each member of the Class pursuant to 47 U.S.C. § 227(b)(3)(B);

c.      An award of actual and statutory damages trebling the damages for each and every knowing and/or willful violation to each member of the Class pursuant to 47 U.S.C. § 227(b)(3)(B);

d.      An injunction requiring Defendant and its agent(s) to cease all unsolicited telephone calling activities, and otherwise protect the interests of the Class, pursuant to 47 U.S.C. § 227(b)(3)(A);

e.      An award of actual and statutory damages of $500 for each and every negligent violation to each member of the Class pursuant to 47 U.S.C. § 227(c)(5)(B);

f.      An award of actual and statutory damages trebling the damages for each and every knowing and/or willful violation to each member of the Class pursuant to 47 U.S.C. § 227(c)(5)(B);

g.      An injunction requiring Defendant and its agent(s) to cease all unsolicited telephone calling activities, and otherwise protect the interests of the Class, pursuant to 47 U.S.C. § 227(c)(5)(A);

h.      Pre-judgment and post-judgment interest on monetary relief;

i.      An award of reasonable attorneys' fees and court costs in this action; and

j.      All other and further relief as the Court deems necessary, just and proper.

DATED this 28th day of February, 2017.

**ANDERSON & KARRENBERG**


*/s/ Heather M. Sneddon*
Heather M. Sneddon
John A. Bluth
Nathan P. Hatch
***Attorneys for Plaintiffs***